UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

TONY WU,

                          Plaintiff,

                                               No. 14CV7015-LTS-FM

         -against-

METRO-NORTH COMMUTER RAILROAD
COMMUTER RAILROAD COMPANY d/b/a
METRO-NORTH RAILROAD & JIM HAW,

                        Defendants.

------------------------------------------------------------x

### MEMORANDUM OPINION AND ORDER

         Plaintiff Tony Wu ("Wu" or "Plaintiff") brings this action against Defendants

Metro-North Commuter Railroad Company ("Metro-North") and Jim Haw ("Haw" and,

collectively, "Defendants"), seeking declaratory relief, equitable relief and damages for alleged

violations of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 et seq.;

the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 623 et seq.; the

Equal Protection Clause of the Fourteenth Amendment to the United States Constitution; and the

free speech provision of the First Amendment to the United States Constitution.  Defendants

Metro North and Haw move, pursuant to Federal Rule of Civil Procedure 12(b)(6), for dismissal

of certain of Plaintiff's claims against Defendant Haw for failure to state a claim upon which

relief can be granted.  The Court has jurisdiction of this case under 28 U.S.C. § 1331.  The Court

has carefully considered the parties' submissions.  For the reasons stated below, the Court grants

in part, and denies in part, the motion.

BACKGROUND[1]

Plaintiff Tony Wu is a sixty-five year old man who has worked as a Database Administrator in Metro-North's Information Technology ("IT") Department for more than 13 years.  (See AC ¶¶ 11-12.)  According to Plaintiff, up until the events that precipitated this suit, his work performance "always met or exceeded Metro-North's expectations."  (Id. ¶ 13.) Defendant Jim Haw is the Deputy Director of Metro-North's IT Department and, as such, is Plaintiff's direct supervisor.  (Id. ¶ 15.)  Defendant Metro-North is a federally and publicly funded organization, and a qualified "employer" within the meaning of both the ADA and the ADEA.  (Id. ¶ 9.)

On or about March 5, 2012, Metro-North and the Transportation Communication Union entered into an agreement governing the terms and conditions of employment for Metro-North's IT employees.  (Id. ¶ 16.)  The agreement provided that employees who voluntarily retired by September 5, 2013, would retain their lifetime health benefits, and those who did not would lose such benefits.  (Id.)  In response to the new contract, on or about October 15, 2015, Plaintiff filed complaints with Metro-North, the Office of the Inspector General, the Department of Labor,[2] and the United States Department of Justice, alleging age discrimination on the part of Metro-North.  (Id. ¶ 17.)  Specifically, Plaintiff claimed that the Transportation Communication Union and Metro-North "deliberately misled older employees throughout the negotiation of the

---

[1]   The facts recited herein are drawn from the Amended Complaint ("AC") in this action and are taken as true for the purposes of this motion practice.  (Docket Entry No. 24.)

[2]   Plaintiff does not specify in his Amended Complaint to what Inspector General's office he complained, nor whether the Department of Labor he refers to is that of New York State or the federal government.

new contract," with the end result of a "systematic reduction in benefits for older employees based simply upon their age."  (AC ¶ 17.)

In early April 2013, Plaintiff was diagnosed with severe obstructive sleep apnea and lumbar radiculopathy, conditions which limited his daily activities.  (Id. ¶ 18.)  Plaintiff informed Haw of these conditions and requested intermittent leave to receive medical care.  (Id.)  In response, Haw allegedly told Plaintiff that he should "just retire" on account of his disabilities and age.  (Id.)  On or about May 9, 2013, Plaintiff began taking leave to treat his disabilities.  (Id. ¶ 19.)  At that point, Haw allegedly began to foster a "severe and pervasive hostile work environment fixated on Plaintiff's age and disability."  (Id.)  Plaintiff alleges that Haw "constantly harassed" him in an attempt to pressure him into retiring.  (Id.)  Plaintiff further alleges that Haw began to assign him "gargantuan projects to complete with unrealistic deadlines," and that Haw required him to complete these projects in violation of the IT department's best practice guidelines and without any aid or training, making the work more difficult.  (See id. ¶ 20.)  Plaintiff claims that Haw did not subject any similarly situated younger or non-disabled employees to these types of assignments.  (Id.)  In addition, Plaintiff claims that, on or about July 22, 2013, Haw sent him a "threatening memorandum" in which he indicated that he would be closely monitoring Plaintiff's performance.  (Id. ¶ 21.)  Plaintiff alleges that this memorandum was sent to "all Metro-North senior management," and that a copy of it was placed in his personnel file, "which is utilized by management to determine which employees receive raises and promotions."  (See id.)

On or about July 25, 2013, Plaintiff filed a complaint with the Office of Diversity and Equal Employment Opportunity, which is responsible for handling complaints from individuals who believe they have been discriminated against by federally funded entities like

Metro-North.  (AC ¶ 22.)  Plaintiff claims that, in this complaint, he described in detail the

discrimination that he had personally experienced at the hands of Defendants.  (See id.)  Plaintiff

alleges that, following this complaint, Defendants' efforts to force him to retire intensified.  (Id.

¶ 23.)  For example, Plaintiff claims that Haw and another senior manager met with him on a

weekly basis over the course of eight months to "unmercifully criticize and degrade" him."  (Id.)

Plaintiff alleges that younger and non-disabled employees were not subjected to such treatment.

(Id.)  Plaintiff claims that he complained to Metro-North management about this treatment, but

that no action was taken to address his concerns.  (Id. ¶ 25.)

On or about October 30, 2013, Plaintiff filed a "Charge of Discrimination" with

the Equal Employment Opportunity Commission ("EEOC"), in which he alleged age

discrimination in violation of the ADEA, disability discrimination in violation of the ADA, and a

hostile work environment predicated on his age and disability.  (Id. ¶ 26.)  In the charge, Plaintiff

described what he perceived to be "a pervasive practice of discriminating based on age and

disability," and claimed that Metro-North had received numerous complaints, but had failed to

take steps to remedy the discrimination.  (Id.)  Plaintiff attached the complaint he had submitted

to the Office of the Inspector General, in which he had described the union negotiations that he

alleges forced numerous older employees to retire.  (Id.)  Plaintiff alleges that, in the months

following his filing of the charge, Defendants Metro-North and Haw began to retaliate against

him more severely, by increasing their efforts to pressure him into retirement and refusing to

grant his requests to leave work for medical appointments.  (Id. ¶¶ 27, 29.)  Plaintiff further

claims that Defendants unreasonably delayed the submission of a proposal that he had created to

the Metro-North IDEAS board, an organization that rewards employees for "innovative ideas."

(Id. ¶ 28.)  This delay, Plaintiff claims, cost him several thousands of dollars and deprived him of

the professional benefits of the IDEAS program.  (AC ¶ 28.)  Furthermore, Plaintiff claims that

he was tasked with finishing "another enormous project" in less than 60 days, which in reality

would have required close to a year to complete, and that he was refused necessary training.  (Id.

¶ 29.)  When Plaintiff indicated that he would be unable to finish the project under such

constraints, he was allegedly belittled.  (See id.)  Defendant Haw then took the project from

Plaintiff and reassigned it to a younger, non-disabled employee, at which point Haw extended,

and eventually eliminated altogether, the deadline for its completion.  (Id.)

On or about March 14, 2014, Plaintiff lodged a complaint about this treatment

with Metro-North Management.  (Id. ¶ 30.)  Following this complaint, Defendants allegedly

began to refuse Plaintiff's reasonable overtime requests, including one that was submitted after

Plaintiff received a distress call about one of his projects at around midnight on April 5, 2014.

(Id. ¶ 31.)  Defendants' refusal allegedly caused Plaintiff a "significant increase in workload and

stress."  (Id.)  During this time, Plaintiff claims that his "legitimate complaints fell on deaf ears"

(id. ¶ 32), and that he was further punished by being forced to work for a stretch of thirty-eight

consecutive hours.  (Id. ¶ 33.)  Plaintiff alleges that he was marginalized and that Defendants

refused to take steps to rectify the allegedly hostile work environment despite his numerous

complaints.  (Id. ¶ 34.)

After investigating his allegations, the EEOC issued Plaintiff a "Dismissal and

Notice of Rights" document dated June 30, 2014.  (Id. ¶ 7.)  This dismissal constituted

exhaustion of Plaintiff's administrative remedies.  (Id.)  Plaintiff filed his Complaint in this

action on August 28, 2014 (Docket Entry No. 1), and his Amended Complaint on December 29,

2014.  (Docket Entry No. 24.)  On January 16, 2015, Defendants filed the instant motion,

seeking dismissal of the Complaint's Fifth Cause of Action (for violation of the  Equal

Protection Clause of the Fourteenth Amendment), and Sixth Cause of Action (for unlawful retaliation in violation of the First Amendment).  (See Docket Entry Nos. 31-32.)

DISCUSSION

Motion to Dismiss Standard

When deciding a motion pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss complaint for failure to state a claim, the Court assumes the truth of the facts asserted in the complaint and draws all reasonable inferences from those facts in favor of the plaintiff.  See Harris v. Mills, 572 F.3d 66, 71 (2d Cir. 2009).  In order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).  If the plaintiff has not "nudged [its] claims across the line from conceivable to plausible, [the] complaint must be dismissed."  Twombly, 550 U.S. at 570.

The Supreme Court has held that, at the pleading stage, a plaintiff who asserts a discrimination claim is not required to make out a prima facie case of discrimination.  See Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002).  In other words, "at the motion to dismiss stage in a discrimination suit, a plaintiff 'need not allege facts establishing each element of a prima facie case of discrimination,' but the complaint 'must at a minimum assert nonconclusory factual matter sufficient to nudge its claims across the line from conceivable to plausible.'"  Johnson v. Morrison & Foerster LLP, No. 14CV0428-JMF, 2015 WL 845723, at *3 (S.D.N.Y.

Feb. 26, 2015) (quoting E.E.O.C. v. Port Auth. of N.Y. & N.J., 768 F.3d 247, 254 (2d Cir.

2014)).  Nonetheless, courts have held that the elements of a prima facie case "provide an outline

of what is necessary to render [a plaintiff's employment discrimination] claims for relief

plausible."  Sommersett v. City of New York, No. 09CV5916-LTS-KNF, 2011 WL 2565301, at

*5 (S.D.N.Y. June 28, 2011).  Courts within this Circuit have extended the reasoning of

Swierkiewicz to plaintiffs asserting claims of unlawful retaliation as well.  See, e.g., Corbett v.

Napolitano, 897 F. Supp. 2d 96 (E.D.N.Y. 2012); Smith v. Westchester County, 769 F. Supp. 2d

448 (S.D.N.Y. 2011).  The Second Circuit's recent decision in Littlejohn v. City of New York,

14-1395-CV, 2015 WL 4604250 (2d Cir. Aug. 3, 2015) represents an effort by that court to

reconcile the more relaxed discrimination pleading standard set out in Swierkiewicz with the

heightened pleading requirements of Iqbal.  In Littlejohn, the Second Circuit held that, absent

direct evidence of discrimination, to survive a motion to dismiss a discrimination claim a

plaintiff must plausibly allege facts tending to demonstrate that: (1) he is a member of a

protected class; (2) he was qualified for his position; (3) he suffered an adverse employment

action; and (4) he has minimal factual support for the proposition that the employer was

motivated by discriminatory intent.  See id., at *8.

       Plaintiff raises his First and Fourteenth Amendment claims under 42 U.S.C.

§ 1983, the statute that provides a mechanism for the assertion of civil claims for violations of

constitutionally-secured rights.  (See AC ¶¶ 70, 77.)  "To state a claim under Section 1983, a

complaint must contain factual allegations plausibly suggesting: (1) that the challenged conduct

was attributable at least in part to a person acting under color of state law, and (2) that such

conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or

laws of the United States."  Jarrach v. Sanger, 08CV2807-SJF-ARL, 2010 WL 2400110, at *7

(E.D.N.Y. 2010) (citing <u>Gomez v. Toledo</u>, 446 U.S. 635, 640 (1980)).  Plaintiff has sufficiently

alleged, and Defendants do not appear to dispute that, while working as a supervisor for Metro-

North, a "public benefit corporation formed under the laws of the State of New York" (<u>see</u> AC ¶

9), Defendant Haw acted under color of state law.  <u>See</u> <u>Philippeaux v. North Central Bronx</u>

<u>Hosp.,</u> 871 F. Supp. 640, 652 (S.D.N.Y. 1994).  Thus, the Court need only determine whether

Plaintiff has sufficiently pleaded his allegations that Haw's actions deprived him of his

constitutional rights under the First and Fourteenth Amendments.


<u>First Amendment Retaliation Claim</u>

   In order for a public employee's First Amendment retaliation claim to survive a

motion to dismiss, he must allege facts demonstrating that "(1) [his] speech was constitutionally

protected; (2) [he] suffered an adverse employment action; and (3) the speech was a motivating

factor in the adverse employment decision."  <u>Felton v. Katonah Lewisboro School Dist.</u>, No.

08CV9340-CSR, 2009 WL 2223853, at *4 (S.D.N.Y. July 27, 2009) (citing <u>Ruotolo v. City of</u>

<u>New York</u>, 514 F.3d 184, 188-89 (2d Cir. 2008)); <u>see also</u> <u>Smith v. City of New York</u>, No.

14CV2690-NRB, 2015 WL 5231366, at *8 (S.D.N.Y. Sept. 8, 2015) ("[t]o plead a claim of

retaliation in violation of the First Amendment, a public employee plaintiff must allege (1) that

he engaged in activity protected by the First Amendment; (2) that he suffered an adverse

employment action; and (3) that there was a causal connection between the protected activity

and the adverse employment action") (citing <u>Smith v. Cty. of Suffolk</u>, 776 F.3d 114, 118 (2d Cir.

2015)).  First Amendment protection of a public employee's speech turns, in the first instance,

on "whether the employee spoke as a citizen on a matter of public concern.  If the answer is no,

the employee has no First Amendment cause of action based on his or her employer's reaction to

the speech.  If the answer is yes, then the possibility of a First Amendment claim arises."  See

Lane v. Franks, 134 S. Ct. 2369, 2378 (2014) (quoting Garcetti v. Ceballos, 547 U.S. 410, 418

(2006)).  The Supreme Court has held that "[w]hether an employee's speech addresses a matter

of public concern must be determined by the content, form, and context of a given statement, as

revealed by the whole record."  Connick v. Myers, 461 U.S. 138, 147-48 (1983).  While the

speaker's motive is a factor to be considered in evaluating the speech, motive is "not dispositive

when a court considers whether the speech at issue addresses a matter of public concern."  Sousa

v. Roque, 578 F.3d 164, 173 (2d Cir. 2009) (quoting Reuland v. Hines, 460 F.3d 409, 411 (2d

Cir. 2006).

　　　　　With respect to the adverse employment action prong of the inquiry, the Second

Circuit has held that "[i]n the context of a First Amendment retaliation claim, '[o]nly retaliatory

conduct that would deter a similarly situated individual of ordinary firmness from exercising his

or her constitutional rights constitutes an adverse action.'"  Zelnik v. Fashion Institute of

Technology, 464 F.3d 217 (2d Cir. 2015) (quoting Washington v. County of Rockland, 373 F.3d

310, 320 (2d Cir. 2004)).  "In this context, '[a]dverse employment actions include discharge,

refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand.'  This list of

retaliatory conduct is certainly not exhaustive, however, and 'lesser actions may also be

considered adverse employment actions.'"  Zelnik, 464 F.3d at 217 (quoting Morris v. Lindau,

196 F.3d 102, 110 (2d Cir. 1999)).

　　　　　Finally, the court must discern whether Plaintiff has alleged facts sufficient to

support an inference that a "causal connection" exists between the plaintiff's speech and the

adverse employment action.  "A plaintiff can establish a causal connection that suggests

retaliation by showing that protected activity was close in time to the adverse action."  Espinal v.

Goord, 558 F.3d 119, 129 (2d Cir. 2009); see also Cobb v. Pozzi, 363 F.3d 89, 108 (2d Cir.

2003) ("[a] plaintiff can establish the causal connection between protected expression and an

adverse employment determination indirectly by showing that the protected activity was

followed by adverse treatment in employment, or directly by evidence of retaliatory animus")

(internal quotation marks and citation omitted).  The Second Circuit "has not drawn a bright line

to define the outer limits beyond which a temporal relationship is too attenuated to establish a

causal relationship between the exercise of a federal constitutional right and an allegedly

retaliatory action."  Gorman–Bakos v. Cornell Co-op Extension of Schenectady Cnty., 252 F.3d

545, 554 (2d Cir. 2001).  At base, the Plaintiff must plead facts supporting an inference that his

"speech played a substantial part in the employer's adverse employment action."  See Walker v.

Schriro, No. 11CV9299-JPO, 2013 WL 1234930, at *8 (S.D.N.Y. Mar. 26, 2013) (quoting

Ezekwo v. New York City Health & Hospitals Corp., 940 F.2d 775, 780-81 (2d Cir. 1991)).

     The Court has identified four separate instances of speech in the Plaintiff's

Complaint from which a cause of action for First Amendment retaliation might arise.

     A.  *Plaintiff's July 25, 2013, Complaint to the Office of Diversity and Equal*
     *Employment Opportunity and March 14, 2014, Complaint to Metro-North*
     *Management*

     Plaintiff alleges that he filed complaints with both the Office of Diversity and

Equal Employment Opportunity (which is responsible for handling complaints by individuals

who believe they have been discriminated against by federally funded entities) on July 25, 2013

(see AC ¶ 22), as well as with Metro-North's upper-level management on March 14, 2014.  (See

id. ¶ 30.)  As Haw points out, the central question in determining whether a plaintiff's speech

was made as an employee or as a citizen is "whether the employee is seeking to vindicate

personal interests or to bring to light a 'matter of political, social, or other concern to the community.'"  Rao v. New York City Health and Hospitals Corp., 905 F. Supp. 1236, 1243 (S.D.N.Y. 1995) (quoting Connick, 461 U.S. at 146).  "Even as to an issue that could arguably be viewed as a matter of public concern, if the employee has raised the issue solely in order to further his own employment interest, his First Amendment right to comment on that issue is entitled to little weight in the balancing analysis."  White Plains Towing Corp. v. Patterson, 991 F.2d 1049, 1059 (2d Cir. 1993).  "Speech that relates primarily to matters of personal interest or internal office affairs, in which the individual speaks as an employee rather than as a citizen, cannot support a First Amendment claim."  Mishk v. Destefano, 5 F. Supp. 2d 194, 200 (S.D.N.Y. 1998).

Although the parties dispute whether Plaintiff spoke as a citizen or as an employee when he filed these two complaints, the Court need not decide this issue, as it is plain from the Amended Complaint that Plaintiff's speech in these instances did not address a matter of public concern.  Plaintiff does not allege that his complaints focused on anything beyond consequences he personally suffered at the hands of Defendants.  (See AC ¶¶ 22, 30.)  Indeed, Plaintiff does not indicate that either of these complaints even alluded to any alleged pattern of pervasive discrimination that extended beyond him.  Courts have held that complaints such as this do not rise to the level of addressing a matter of public concern.  See, e.g., Pedrosa v. City of New York, 13CV1890-LGS, 2014 WL 99997, at *12 (S.D.N.Y. Jan. 9, 2014) (finding no matter of public concern reached when "each of the complaints lodged by Plaintiff . . . concerned only Plaintiff's own situation and did not hint at broader problems.").  Additionally, "the forum in which the plaintiff speaks is relevant" to the public concern inquiry.  See Adams v. Ellis, 09CV1329-PKC, 2012 WL 693568, at *9 (S.D.N.Y. March 2, 2012).  In that connection, the

Court notes that Plaintiff's transmission of these complaints through private, internal mechanisms seems unlikely to have been calculated to alert the general citizenry to a matter of public concern.

Furthermore, in his opposition papers, Plaintiff does not even argue that these particular instances of speech addressed matters of public concern.  (See Plaintiff Tony Wu's Memorandum of Law in Opposition to Defendant Jim Haw's Motion to Dismiss Plaintiff Tony Wu's Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) for Failure to State a Claim Upon Which Relief Can Be Granted ("Wu Opp. Memo"), at pp. 12-16).  In light of the Plaintiff's failure to address arguments specific to these complaints in his opposition papers, the Court deems them abandoned.  See, e.g., Adams v. New York State Educ. Dept., 752 F. Supp. 2d 420 (adopting Report and Recommendation and dismissing claims that plaintiff failed to address in opposition briefing).  Therefore, the Court grants Haw's motion to dismiss Plaintiff's First Amendment retaliation claims insofar as they are based on his July 25, 2013, and March 14, 2014, complaints.

### B.  Plaintiff's October 15, 2012, Complaints to Metro-North, the Office of the Inspector General, the Department of Labor, and the United States Department of Justice[3]

Plaintiff claims that, following Metro-North's entry into a contract with the Transportation Communication Union that altered the status of IT employees' lifetime health

---

[3]     For the purposes of this motion, Haw does not dispute that Plaintiff was speaking as a citizen, outside the scope of his official duties, when he complained to outside agencies including the Office of the Inspector General, the Department of Labor, the United States Department of Justice and the EEOC.  (See Reply Memorandum of Law in Support of Defendants Metro-North Commuter Railroad Company d/b/a/ Metro-North Railroad and Jim Haw's Motion to Dismiss Plaintiff Tony Wu's Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) for Failure to State a Claim Upon Which Relief Can be Granted ("Haw Reply"), at p. 1.)

benefits, he filed complaints with Metro-North, the Office of the Inspector General, the

Department of Labor and the U.S. Department of Justice.  (AC ¶ 17.)  Plaintiff alleges that these

complaints addressed a "systematic reduction in benefits for older employees," and included the

assertion that "the union and Defendant Metro-North had deliberately misled older employees

throughout the negotiation of the new contract."  (Id.)

        As Defendant Haw points out, however, the allegation makes no mention of him

nor of any role he played in, or knowledge he had of, the wrongful activities with which Plaintiff

charges Metro-North and the Transportation Communication Union.  (See id.; Haw Reply at p.

3.)  Indeed, the complaints do not appear to have implicated Defendant Haw in any way.  "As a

general matter, it is difficult to establish one defendant's retaliation for complaints against

another defendant."  Hare v. Hayden, 09CV3135-RWS, 2011 WL 1453789, at *4 (S.D.N.Y. Apr.

14, 2011).  Plaintiff has not pleaded any facts that would suggest that Defendant Haw even had

any knowledge of these complaints, rendering baseless any inference that he might have been

motivated to retaliate for them.  See, e.g., Davis-Bell v. Columbia University, 851 F. Supp. 2d

650, 683 (S.D.N.Y. 2012); see also Long v. AT&T Info. Sys., Inc., 733 F. Supp. 188, 205 n.22

(S.D.N.Y. 1990) (noting that plaintiff must show that person who engaged in adverse conduct

had notice of the protected activity).

        Plaintiff has failed to plead any facts that might indicate, even minimally, a causal

connection between his complaints and Haw's allegedly responsive actions.  Plaintiff claims to

have filed these complaints on or about October 15, 2012.  (AC ¶ 17.)  He does not allege that

Haw took any negative action until at least May 9, 2013, seven months later.  (Id. ¶ 19.)  While

the Second Circuit has not established a "bright line rule" as to a time span that would plausibly

support an inference of causation, "[t]he cases that accept mere temporal proximity between an

employer's knowledge or protected activity and an adverse employment action as sufficient evidence of causality . . . uniformly hold that the temporal proximity must be 'very close.'" Walder v. White Plains Board of Educ. 738 F. Supp. 2d 483, 503 (S.D.N.Y. 2010).  See also Ruhling v. Tribune Co., No. 04CV02430-ARL, 2007 WL 28283, at *23 (E.D.N.Y. Jan. 3, 2007) ("district courts in this Circuit have consistently held that a passage of two months between the protected activity and the adverse employment action seems to be the dividing line.").  Plaintiff thus has failed to plead facts sufficient to make out a plausible First Amendment retaliation claim against Defendant Haw with respect to his October 15, 2012, complaints, and the Court grants Defendant's motion to dismiss his claims against Defendant Haw insofar as they are based on these complaints.

> C.  *Plaintiff's October 30, 2013, Charge of Discrimination Filed with the EEOC*

Plaintiff claims to have filed his "Charge of Discrimination" with the EEOC on or about October 30, 2013.  (AC ¶ 26.)  According to Plaintiff, this charge detailed a "pervasive practice of discriminating" perpetrated by the Defendants, which included "systematically forcing all older employees to retire by taking away their medical benefits, placing publically funded projects at risk by forcing Plaintiff to violate best practices guidelines, and treating older employees disparately compared to younger employees."  (Id.)  Haw argues that Plaintiff's complaint to the EEOC was based on a "purely personal employment grievance" (see Memorandum of Law in Support of Defendants Metro-North Commuter Railroad Company d/b/a/ Metro-North Railroad and Jim Haw's Motion to Dismiss Plaintiff Tony Wu's Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) for Failure to State a Claim Upon Which Relief Can be Granted ("Haw Memo"), at p. 16), and therefore does not constitute speech on a matter of public concern.

However, Plaintiff has alleged that his EEOC charge described widespread discrimination at Metro-North.  The Second Circuit has "held repeatedly that when a public employee's speech regards the existence of discrimination in the workplace, such speech is a matter of public concern."  <u>Kontis v. Valley Stream Cent. High School District</u>, 394 F.3d 121, 125 (2d Cir. 2005).  <u>See</u> <u>also</u> <u>Cotarelo v. Vill. of Sleepy Hollow Police Dep't.</u>, 460 F.3d 247, 252 (2d Cir. 2006) ("we have repeatedly held that discrimination in a government workplace is a matter of public concern.").  Furthermore, Plaintiff claims to have alleged that publicly funded projects were placed at risk by the Defendants' actions (AC ¶ 26), a claim that clearly implicates matters of public concern.  At this stage, where the Court takes facts asserted by the Plaintiff as true and draws all inferences in Plaintiff's favor, it is apparent that Plaintiff has pleaded facts indicating that his EEOC charge touched upon matters of public concern.[4]

The Court further finds that Plaintiff has pleaded facts sufficient to support an inference that he suffered an adverse employment action in response to his EEOC charge.  In his Amended Complaint, Plaintiff indicates that Defendants injured him "monetarily and professionally" by delaying submission of his proposal to the Metro-North IDEAS board.  (AC ¶ 28.)  According to Plaintiff, this caused him a loss of "thousands of dollars" in addition to certain other "professional benefits."  (<u>Id.</u>)  The Second Circuit has held that, when a plaintiff alleges that his "reputation, opportunities for advancement and earning potential have been impaired by the acts of the defendant," this qualifies as "actionable harm" for Section 1983 purposes.  <u>See</u>

---

[4]     At the very least, Plaintiff has demonstrated that he is entitled to put forth evidence on this point.  The Court bears in mind that "[t]he issue of whether a plaintiff is engaged in speech involving a matter of public concern is a fact-specific inquiry that sometimes cannot be resolved until summary judgment." <u>O'Leary v. Town of Huntington</u>, No. 11CV3754-JFB-GRB, 2012 WL 3842567, at *11 (E.D.N.Y. Sept. 5, 2012).

Bernheim v. Litt, 79 F.3d 318, 325 (2d Cir. 1996).  The consequences allegedly suffered by

Plaintiff as a result of filing his EEOC charge could "deter a similarly situated individual of

ordinary firmness from exercising his or her constitutional rights."  Zelnik, 464 F.3d at 225-26.

Finally, the Court finds that Plaintiff has sufficiently pleaded a factual basis for

his claim that a causal connection existed between his protected speech and the adverse

employment action that he suffered.  As noted, a "causal connection can be established indirectly

by showing that the protected activity was followed closely by discriminatory treatment."

DeCintio v. Westchester County Medical Center, 821 F.2d 111, 115 (2d Cir. 1987).  Although

the timeline is somewhat unclear from the Complaint, Plaintiff does appear to allege that the

incident with the IDEAS board proposal happened "soon after" his complaints (AC ¶ 28), and

that it was a part of an ongoing pattern of discrimination that he was subjected to "[i]n the

months after" his EEOC charge.  (Id. ¶ 27.)  Furthermore, Defendant Haw does not argue that

Plaintiff has insufficiently alleged a causal connection in his briefing.  (See generally Haw

Memo.)  Thus, drawing all reasonable inferences in Plaintiff's favor, the Court finds that

Plaintiff has alleged sufficient facts to sustain a plausible First Amendment retaliation claim

pursuant to Section 1983 against Haw with respect to actions following the EEOC charge.  The

Court therefore denies Haw's motion to dismiss Plaintiff's Sixth Cause of Action to the extent

that it is based on his EEOC charge.

Fourteenth Amendment Equal Protection Claim

As an initial matter, the parties dispute whether Plaintiff's Fourteenth

Amendment Equal Protection claim is foreclosed by the ADEA.  Defendant points out that

several Circuit Courts of Appeal have held that the ADEA precludes Section 1983 claims based

on age discrimination in employment.  (See Haw Memo, p. 22; see also Hildebrand v. Allegheny County, 757 F.3d 99, 110 (3d Cir. 2014) ("we join the majority of Courts of Appeals in concluding that Congress intended the ADEA to be the exclusive remedy for claims of age discrimination in employment"); Tapia-Tapia v. Potter, 322 F.3d 742 (1st Cir. 2003);  Zombro v. Baltimore City Police Dept., 868 F.2d 1364 (4th Cir. 1989).)  The Second Circuit has not yet decided this issue.  See Piccone v. Town of Webster, 511 F. App'x 63, 64 n. 1 (2d Cir. Feb. 7, 2013) (summary order) ("It is an open question in our circuit whether the ADEA preempts age discrimination claims under Section 1983.").  However, courts within the Second Circuit have consistently held that the ADEA does not preclude age discrimination actions brought pursuant to Section 1983, so long as such claims are brought to vindicate distinct violations of constitutional rights.  See, e.g., Reed v. Garden City Union Free School Dist., 987 F. Supp. 2d 260, 264 (E.D.N.Y. 2013) ("The Second Circuit has consistently found that a plaintiff may bring a claim under § 1983 – not to enforce rights conferred only by statute, but for distinct violations of a constitutional right . . . The Court is guided by the precedent of the Second Circuit, and rejects Defendant's argument that the § 1983 claim is preempted by Plaintiff's ADEA claim.") (citing Patterson v. County of Oneida, 375 F.3d 206, 225 (2d Cir. 2004); Gierlinger v. New York State Police, 15 F.3d 32, 34 (2d Cir. 1994)).  The Seventh Circuit has also reached this conclusion.  See Levin v. Madigan, 692 F.3d 607 (7th Cir. 2012).  The Court finds that, at this stage, it is sufficient for Plaintiff to allege a colorable argument that his constitutional rights have been violated.

"[T]he Supreme Court has held that, to survive a motion to dismiss, a complaint in an employment discrimination lawsuit need not contain specific facts establishing a prima facie case of discrimination under the framework set forth in McDonnell Douglas Corp. v.

Green." Johnson v. Morrison & Foerster LLP, 14CV0428-JMF, 2015 WL 845723, at *3

(S.D.N.Y. 2015) (internal quotation marks and citation omitted). See also Swierkiewicz, 534

U.S. 506. The factors of a prima facie case do, however, "provide an outline of what is

necessary" to render a plaintiff's allegations plausible. Sommersett, 2011 WL 2565301, at *5.

Furthermore, as noted above, the Second Circuit's recent decision in Littlejohn teaches that, in

order to survive a motion to dismiss on a discrimination claim, a plaintiff must plausibly allege

facts tending to demonstrate that: (1) he is a member of a protected class; (2) he was qualified

for his position; (3) he suffered an adverse employment action; and (4) he has minimal factual

support for the proposition that the employer was motivated by discriminatory intent. See

Littlejohn, 2015 WL 4604250 at *8.

       Plaintiff clearly has alleged that he was a member of a protected class, claiming to

have been "a sixty-three year old male at the time of the commencement of this action." (AC

¶ 11.) Plaintiff also has pleaded facts demonstrating that he was qualified for his position,

indicating that he has held his job for over 13 years, that his work has "always met or exceeded

Metro-North's expectations," and that he is in fact still employed by Metro North. (Id. ¶¶ 8, 12-

13.) The bar for this element is exceptionally low, in that "the plaintiff need not show perfect

performance or even average performance . . . Instead, [he] need only make the minimal

showing that she possesses the basic skills necessary for performance of [the] job." Gregory v.

Daly, 243 F.3d 687, 696 (2d Cir. 2001) (internal quotation marks and citations omitted).

Plaintiff's continuous – and ongoing – employment with Metro-North certainly establishes that

he possesses the basic skills needed for his position.

       Where Plaintiff's claim falls short is in his failure to demonstrate that he suffered

an adverse employment action for the purposes of his Equal Protection claim.[5]  While the

consequences Plaintiff claims to have suffered at the hands of Defendant Haw may qualify as

adverse employment actions in the retaliation context, "the standard for an adverse employment

action for a discrimination claim . . . is more stringent than for a retaliation claim."  Wagner v.

County of Nassau, No. 11CV1613-JS-ARL, 2014 WL 3489747, at *10 n.4 (E.D.N.Y. July 11,

2014) (citing Galabya v. N.Y. City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000)).  In the

disparate treatment context, an adverse employment action must be a "materially adverse

change" in the terms and conditions of employment.  Galabya, 202 F.3d at 640.  Such a change

must be "more disruptive than a mere inconvenience or an alternation of job responsibilities,"

and may include scenarios such as "termination of employment, a demotion evidenced by a

decrease in wage or salary, a less distinguished title, a material loss of benefits [or] significantly

diminished material responsibilities."  Id.

Plaintiff has alleged that Haw made remarks to him that were geared towards

pressuring him into retiring (AC ¶ 19), that Haw assigned him tasks with unreasonable deadlines

(id. ¶ 20) and that he was sent a "negative" memorandum and forced to participate in a

performance plan.  (Id. ¶ 21.)  Plaintiff also generally alleges that the Metro-North "Defendants"

delayed submission of his proposal to the Metro-North IDEAS board (id. ¶ 28) and failed to

remedy any of the perceived discrimination of which he complained.  (Id. ¶ 26.)  None of these

allegations provides a sufficient factual basis for the adverse employment action element of

Plaintiff's disparate treatment claim.  Plaintiff does not allege that he was terminated (indeed, he

---

[5]      It is not entirely clear from the Complaint whether Plaintiff is purporting to assert
a hostile work environment claim (see AC ¶¶ 69-75), but because of Plaintiff's
failure to argue the sufficiency of such an Equal Protection claim in response to
Defendants' motion, the Court finds that any such claim against Haw has been
abandoned.  See Adams, 752 F. Supp. 2d 420.

remains a Metro-North employee, see AC ¶ 8), nor that he suffered a decrease in wage, salary, title, responsibilities or a loss of benefits.[6]  The acts that Plaintiff has alleged were taken against him fall squarely within the category of disruptive inconveniences that courts within this district have rejected as insufficient to constitute adverse employment actions for the purposes of Equal Protection claims.  See, e.g., Mabry v. Neighborhood Defender Service, 769 F. Supp. 2d 381, 393 (S.D.N.Y. 2011) ("Excessive scrutiny and close monitoring without more do not constitute adverse employment actions [and] . . . [n]egative evaluations or reviews, without accompanying tangible harm or consequences, do not constitute materially adverse action altering the conditions of employment"); see also Fridia v. Henderson, No. 99CV10749-BSJ, 2000 WL 1772779, at *7 (S.D.N.Y. Nov. 30, 2000) (allegations of excessive workload do not rise to the level of an adverse action); Katz v. Beth Israel Medical Center, No. 95CV7183-AGS, 2001 WL 11064, at *14 (S.D.N.Y. Jan. 4, 2001) (holding, on motion for summary judgment, that "[b]eing yelled at, receiving unfair criticism, receiving unfavorable schedules or work assignments, and being told to retire or work part time . . . do not rise to the level of adverse employment actions.").  To the extent that Plaintiff's disparate treatment claim is premised on the contractual eligibility change for retiree health benefits, he has alleged no facts indicating that Haw played any role in the change.  Because Plaintiff has failed to plead facts demonstrating that he suffered an age-motivated adverse employment action at the hands of Defendant Haw,[7] his Equal

---

[6]     Although Plaintiff does claim to have lost certain retirement benefits as a result of the agreement between Metro-North and the Transportation Communication Union, he fails to allege any facts tying Defendant Haw to that decision. (See AC ¶¶ 16, 24.)  See Abascal v. Jarkos, 357 F. App'x 388, 391 (2d Cir. 2009) (finding that a First Amendment retaliation claim was properly dismissed when plaintiff failed to plead facts showing defendant's personal involvement).

[7]     Plaintiff's Amended Complaint alleges that the IDEAS submission delay denied him monetary compensation and that he was denied overtime, but does not

Protection Claim against Haw must fail.  The Court therefore grants Defendants' motion to dismiss Plaintiff's Fifth Cause of Action as against Defendant Haw.

CONCLUSION

In light of the foregoing, the Court grants Defendant Haw's motion seeking dismissal of Plaintiff's Sixth Cause of Action for unlawful retaliation in violation of the First Amendment insofar as that Cause of Action is based on Plaintiff's October 15, 2012, July 25, 2013, and March 14, 2014, complaints.  The Court further grants Haw's motion to the extent it seeks dismissal of the Fifth Cause of Action asserting Plaintiff's Fourteenth Amendment Equal Protection Clause claim.  The Court denies Haw's motion to the extent that it seeks dismissal of the Sixth Cause of Action based on Plaintiff's October 30, 2013, charge filed with the EEOC.

This Memorandum Opinion and Order resolves docket entry number 31.

The final pretrial conference in this matter will be held on **Friday, February 19, 2016, at 11:30 a.m. in Courtroom 12D.**  The parties are reminded to make their submissions in accordance with the pretrial scheduling order entered in this case.  (Docket Entry No. 23.)

SO ORDERED.

Dated: New York, New York
      September 22, 2015

                                                                    /s/ Laura Taylor Swain  
                                                     LAURA TAYLOR SWAIN
                                                   United States District Judge

---

proffer facts even minimally connecting those alleged actions with Plaintiff's age. Rather, Plaintiff alleges that those actions were taken in retaliation for complaints. (See AC ¶¶ 28, 31.)